Case 2:20-cr-00112-RCY-LRL Document 27 Filed 14/06/2020 Page 1 of 15 PageID# 5



FILED
IN OPEN COURT

DEC - 3 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **UNDER SEAL** |
| ) | |
| v. ) | CRIMINAL NO. 2:20-cr- 112 |
| ) | |
| MICHAEL STEVEN LAMBERT, ) | 21 U.S.C. § 846 |
| a/k/a "Christopher DeCamillo," ) | Conspiracy to Distribute and Possess with |
| (Counts 1-4, 6-7) ) | Intent to Distribute Schedule III Controlled |
| ) | Substances |
| LAURA FRANCES LAMBERT, ) | (Count 1) |
| a/k/a "Laura Purcell," ) | |
| (Counts 1-2) ) | 21 U.S.C. §§ 841(a)(1) and (b)(1)(E) and |
| ) | 18 U.S.C. § 2 |
| ▮▮▮▮▮▮▮▮▮▮▮▮ ) | Possession with Intent to Distribute Schedule |
| ) | III Controlled Substances |
| (Count 1) ) | (Count 2) |
| ) | |
| ▮▮▮▮▮▮▮▮▮▮▮▮ ) | 18 U.S.C. §§ 922(g)(1) and 924(a)(2) |
| (Counts 1, 5) ) | Felon in Possession of Firearms and |
| ) | Ammunition |
| ▮▮▮▮▮▮▮▮ ) | (Count 3) |
| (Count 1) ) | |
| ) | 26 U.S.C. § 5861(d) |
| and ) | Possession of an Unregistered National |
| ) | Firearms Act Firearm |
| HAMDY SAYED, ) | (Count 4) |
| (Counts 1, 6) ) | |
| ) | 26 U.S.C. § 5861(f) |
| Defendants. ) | Making of an Unregistered National Firearms |
| ) | Act Firearm |
| ) | (Count 5) |
| ) | |
| ) | 18 U.S.C. § 1956(h) |
| ) | Conspiracy to Launder Money |
| ) | (Count 6) |
| ) | |
| ) | 21 U.S.C. §§ 856(a)(1) and (b) |
| ) | Maintaining a Drug-Involved Premises |
| ) | (Count 7) |

1

|  |  |
|---|---|
| ) | 18 U.S.C. §§ 982(a)(1), 924(d), 21 U.S.C. |
| ) | § 853, 26 U.S.C. § 5872(a), and 28 U.S.C. § |
| ) | 2461 |
| ) | Criminal Forfeiture |

## INDICTMENT

December 2020 TERM – at Norfolk

THE GRAND JURY CHARGES THAT:

INTRODUCTORY ALLEGATIONS

At all times material to this Indictment, Schedule III of the federal Schedules of Controlled Substances, at Title 21, Code of Federal Regulations, Section 1308.13(f), included "any material, compound, mixture or preparation containing any quantity of … (1) Anabolic steroids," as defined by 21 C.F.R. § 1300.01.

COUNT ONE

(Conspiracy to Distribute and Possess with Intent to Distribute
Schedule III Controlled Substances)

Beginning on a date unknown, but no later than on or about February 1, 2020, and continuing thereafter until on or about July 31, 2020, within the Eastern District of Virginia and elsewhere, the defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," (hereinafter "M. LAMBERT"), LAURA FRANCES LAMBERT, a/k/a "Laura Purcell," (hereinafter "L. LAMBERT"), ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and HAMDY SAYED (hereinafter "SAYED") did knowingly and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury, to knowingly and intentionally manufacture, distribute, and possess with the intent to

2

manufacture and distribute anabolic steroids, including but not limited to Fluoxymesterone and Dehydrochloromethyltestosterone, all Schedule III controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E).

## WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

1. It was part of the conspiracy for M. LAMBERT to use fraudulent identifying documents to conceal his identity while engaging in the manufacture and distribution of anabolic steroids.

2. It was part of the conspiracy for M. LAMBERT to open, rent, use, and maintain any place, permanently or temporarily, for the purpose of manufacturing, distributing, and using controlled substances.

3. It was part of the conspiracy for M. LAMBERT to order and receive raw materials from China used to manufacture anabolic steroids.

4. It was part of the conspiracy for M. LAMBERT to act as both the leader of the drug trafficking organization described herein and the lead chemist for the organization.

5. It was part of the conspiracy for M. LAMBERT to employ individuals who were tasked with receiving packages of chemicals shipped to their addresses from China and then forwarding them on to M. LAMBERT.

6. It was part of the conspiracy for M. LAMBERT, ▆▆▆ and ▆▆▆ to manufacture, produce, package, and distribute anabolic steroids for profit.

7. It was part of the conspiracy for L. LAMBERT to label bottles containing anabolic steroids prior to distribution.

8. It was part of the conspiracy for L. LAMBERT to transfer U.S. currency deposits generated by the illegal sales of anabolic steroids from M. LAMBERT's PayPal accounts into

3

her Wells Fargo bank account.

9. It was part of the conspiracy for L. LAMBERT to control monetary assets generated by the illegal sales and distribution of anabolic steroids.

10. It was part of the conspiracy for M. LAMBERT, L. LAMBERT, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ to use the United States Postal Service to ship anabolic steroids and U.S. currency.

11. It was part of the conspiracy for M. LAMBERT to be employed by an unindicted co-conspirator as a "wholesale distributor."

12. It was part of the conspiracy for M. LAMBERT to promote the business he created to market anabolic steroids, "Integrity Labs," on an internet bodybuilding forum called "Hardcore Underground."

13. It was part of the conspiracy for M. LAMBERT to communicate with clients and co-conspirators using end-to-end encrypted and content-expiring messages, photographs, and videos.

14. It was part of the conspiracy for M. LAMBERT to use end-to-end encrypted and content-expiring messages to detail anabolic steroid prices, available products, how to place orders, quantity requirements, and limits for orders.

15. It was part of the conspiracy for M. LAMBERT to deposit the proceeds of anabolic steroids sales using electronic bank transfers (*i.e.*, PayPal) and cryptocurrency transfers (*i.e.*, Bitcoin), such deposits being for the benefit and use of M. LAMBERT and L. LAMBERT.

16. It was part of the conspiracy for M. LAMBERT to supply ▮▮▮▮ located in Jacksonville, Florida, with wholesale amounts of anabolic steroids, and for ▮▮▮▮ to then distribute the steroids to users.

4

17.  It was part of the conspiracy for M. LAMBERT to supply SAYED, located in Katy, Texas, with wholesale amounts of anabolic steroids, and for SAYED to then distribute the steroids to users.

18.  It was a part of the conspiracy for the conspirators to use the proceeds of earlier drug transactions to pay for raw chemical materials necessary for manufacturing anabolic steroids and for luxury vehicles, jewelry, and a horse, among other items.

## OVERT ACTS

The objective of the conspiracy was to make money through the distribution of anabolic steroids. In furtherance of the conspiracy and to accomplish the objective thereof, the following overt acts, among others, were committed in the Eastern District of Virginia and elsewhere:

1.  In or about the spring of 2018, M. LAMBERT acquired identifying information belonging to C.D.C., a living person, through the darkweb and subsequently used this information to obtain fraudulent government-issued identifying documents. He used this alias to avoid detection while engaging in anabolic steroid trafficking.

2.  From the spring of 2018 to in or about July 2020, M. LAMBERT, using the alias "Christopher DeCamillo," shipped wholesale amounts of anabolic steroids to ▇▇▇ in Florida for further distribution.

3.  From in or about December 2019 to in or about February 2020, M. LAMBERT moved to Pennsylvania; while there, he operated a steroid distribution organization out of various residences.

4.  In or about February 2020, M. LAMBERT and L. LAMBERT traveled from Pennsylvania to Virginia, where they began living with ▇▇▇ at his residence in Hanover, Virginia, in the Eastern District of Virginia.

5

5. From in or about February 2020 to in or about April 2020, ▓▓▓▓ assisted M. LAMBERT with anabolic steroid distribution by:

    a. Allowing M. LAMBERT to use his residence to establish a steroid manufacturing and processing center;

    b. Using his ▓▓▓▓ name and address to receive packages through the United States Postal Service containing raw materials needed to manufacture anabolic steroids;

    c. Using his ▓▓▓▓ name and address to send, on average, ten to fifteen packages a day, through the United States Postal Service containing anabolic steroids to customers;

    d. Designing a website for M. LAMBERT to advertise and sell anabolic steroids; and

    e. Using PayPal accounts and email accounts to assist M. LAMBERT in the manufacturing and distribution of anabolic steroids.

6. From on or about March 19, 2020, to on or about July 31, 2020, M. LAMBERT, with the knowledge and assistance of L. LAMBERT, operated a steroid manufacturing and processing center out of a residence he leased on the 3800 block of Spring Grove Avenue in Claremont, Virginia, in the Eastern District of Virginia.

7. From in or about March 2020 to on or about July 31, 2020, ▓▓▓▓ received financial compensation for assisting M. LAMBERT with anabolic steroid distribution by:

    a. Pressing powders into pills after M. LAMBERT combined raw materials to produce anabolic steroid mixtures; and

    b. Transporting packages containing anabolic steroids from the residence in Claremont, Virginia, and shipping them from a post office near ▓▓▓▓ residence in Richmond, Virginia.

8. For a period of time beginning no later than February 2020 to on or about July 31, 2020, M. LAMBERT shipped packages containing anabolic steroids to SAYED in Texas for SAYED to distribute.

9. On or about July 23 and July 24, 2020, using encrypted communications, M. LAMBERT and SAYED discussed a shipment of anabolic steroids that were sent by M. LAMBERT to SAYED via the United States Postal Service but had been delayed in transit.

10. On or about July 24, 2020, using encrypted communications, SAYED confirmed that the shipment had arrived.

11. On or about July 26, 2020, using encrypted communications, M. LAMBERT asked SAYED how much of M. LAMBERT's money SAYED had in his possession. SAYED confirmed he had approximately $9000 of M. LAMBERT's U.S. currency.

12. On or about July 29, 2020, in Claremont, Virginia, in the Eastern District of Virginia, law enforcement searched the residence located on the 3800 block of Spring Grove Avenue and discovered a massive steroid production and distribution center, along with quantities of suspected marijuana, narcotics, two firearms, suppressors, two pill presses, numerous cell phones, an estimated $100,000 in assets, two vehicles (a 2015 Maserati and a 2015 BMW), and $4,650 in United States currency.

(All in violation of Title 21, United States Code, Section 846.)

COUNT TWO

On or about July 29, 2020, in Claremont, Virginia, in the Eastern District of Virginia, the defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," and LAURA FRANCES LAMBERT, a/k/a "Laura Purcell," did knowingly and intentionally possess with the intent to distribute a quantity of anabolic steroids, a Schedule III controlled substance.

(In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E), and Title 18, United States Code, Section 2.)

## COUNT THREE

(Felon in Possession of Firearm)

On or about July 29, 2020, in Claremont, Virginia, within the Eastern District of Virginia, the defendant, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess two firearms and ammunition, to wit, a .22 caliber Aero Precision model X15 rifle and a 9mm Sig Sauer P320 handgun, and .22 caliber, .556 caliber, .300 caliber, and 9mm ammunition, all of which—both firearms and the ammunition—had been shipped and transported in interstate and foreign commerce.

(In violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).)

## COUNT FOUR

(Possession of Unregistered Silencer)

On or about July 29, 2020, in Claremont, Virginia, in the Eastern District of Virginia, the defendant, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," did knowingly possess a firearm that was required to have been registered in the National Firearms Registration and Transfer Record, to wit: a silencer as defined in Title 26, United States Code, Section 5845(a), and Title 18, United States Code, Section 921(a); and that firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

(In violation of Title 26, United States Code, Sections 5841, 5845, 5861(d), and 5871, and Title 18, United States Code Section 921(a).)

## COUNT FIVE

(Making of an Unregistered National Firearms Act Firearm)

In or about early 2020, in Hanover, Virginia, in the Eastern District of Virginia, the defendant, ▇▇▇▇▇▇ did knowingly make a firearm, to wit: a silencer as defined in Title 26, United States Code, Section 5845(a), and Title 18, United States Code, Section 921(a), in violation of Chapter 53 of Title 26, United States Code, in that the silencer is a firearm that was required to have been registered in the National Firearms Registration and Transfer Record, and that was not registered in the National Firearms Registration and Transfer Record.

(In violation of Title 26, United States Code, Sections 5841, 5845, 5861(f), and 5871, and Title 18, United States Code, Section 921(a).)

## COUNT SIX

(Conspiracy to Launder Money)

Beginning in or about July 2020, the exact date being unknown to the grand jury, and continuing thereafter until on or about July 31, 2020, within the Eastern District of Virginia and elsewhere, the defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo" and HAMDY SAYED, did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

(a) Laundering of monetary instruments, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute anabolic

steroids, as set forth and charged in Count One of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) Laundering of monetary instruments, that is, to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, transfer, and exchange of monetary instruments, such property having been derived from a specified unlawful activity, that is, the conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute anabolic steroids set forth and charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1957.

## WAYS, MANNER AND MEANS OF THE CONSPIRACY

In addition to the Ways, Manner, and Means listed in Count One, the Ways, Manner and Means used to accomplish the objectives of the money laundering conspiracy included, among others, the following:

1. It was part of the conspiracy for SAYED to help M. LAMBERT arrange to purchase property in SAYED's name, though the purchase was made with M. LAMBERT's steroids proceeds.

2. It was part of the conspiracy that SAYED arranged financing on the purchase in

his name, though in fact the property was to be M. LAMBERT's.

3. It was part of the conspiracy that SAYED and M. LAMBERT formulated a plan to pay down the loan on the purchase quickly using money orders funded by steroids proceeds M. LAMBERT provided to SAYED.

4. It was part of the conspiracy that SAYED registered the property in his name, despite the property actually belonging to M. LAMBERT.

## OVERT ACTS

In furtherance of the conspiracy, and to bring about the objects and goals of the conspiracy, the defendants herein committed the following overt acts, among others, in the Eastern District of Virginia and elsewhere:

1. On or about July 22, 2020, after having applied for financing on a 2015 Maserati, SAYED received loan documentation to sign from a credit union known to the grand jury.

2. On or about July 24, 2020, SAYED texted M. LAMBERT to tell M. LAMBERT that SAYED had finished signing the loan documentation for the 2015 Maserati.

3. On or about July 24, 2020, M. LAMBERT texted SAYED to tell SAYED that M. LAMBERT planned to leave the next day to meet SAYED in the Houston, Texas area. The purpose of M. LAMBERT's trip was to pick up the 2015 Maserati, which SAYED was purchasing as a nominee for M. LAMBERT.

4. On or about July 24, 2020, M. LAMBERT texted SAYED that M. LAMBERT had "43 stacks in my GUCCI backpack ready for this trip."

5. On or about July 24, 2020, SAYED texted M. LAMBERT that SAYED had $9,280 in cash belonging to M. LAMBERT. SAYED and M. LAMBERT agreed that the $9,280 would be used for the down payment on the 2015 Maserati. Over a text conversation, SAYED and M. LAMBERT further agreed that SAYED would send money orders "to pay off the loan

11

fast, so this way the money is not tracked to [SAYED's] bank account."

6. On or about July 25, 2020, M. LAMBERT left Surry County, Virginia, and traveled to SAYED's location in Harris County, Texas.

7. In or about July 2020, SAYED registered the 2015 Maserati in his name and at his address in the State of Texas.

8. On or about July 25, 2020, approximately four hours after arriving in Harris County, Texas, M. LAMBERT left and headed back towards Virginia.

9. On or about July 28, 2020, M. LAMBERT was stopped by law enforcement in the 2015 Maserati and arrested in Sussex County, Virginia.

(All in violation of Title 18, United States Code, Section 1956(h).)

## COUNT SEVEN

(Maintaining a Drug-Involved Premises)

From on or about March 18, 2020, to on or about July 31, 2020, at a residence located in the 3800 block of Spring Grove Avenue, in Claremont, Virginia, in the Eastern District of Virginia, the defendant, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," did unlawfully, knowingly and intentionally open, rent, use, and maintain any place, permanently or temporarily, for the purpose of manufacturing, distributing, and using any controlled substance.

(In violation of Title 21, United States Code, Sections 856(a)(1) and (b).)

## FORFEITURE

THE GRAND JURY FINDS PROBABLE CAUSE TO BELIEVE THAT:

1. The defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," LAURA FRANCES LAMBERT, a/k/a "Laura Purcell," ▮▮▮▮▮▮ and HAMDY SAYED, if convicted of any of the violations alleged in this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any firearm or ammunition used in or involved in the violation.

2. The defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," and ▮▮▮▮▮ if convicted of any of the violations alleged in Counts Four to Five of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any firearm involved in the violation.

3. The defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," LAURA FRANCES LAMBERT, a/k/a "Laura Purcell," ▮▮▮▮▮▮ and HAMDY SAYED, if convicted of any of the violations alleged in Counts One, Two, and Seven of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2:

   a. Any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of the violation; and

   b. Any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the violation.

4. The defendants, MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo" and HAMDY SAYED, if convicted of the violation alleged in Count Six of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of

Criminal Procedure 32.2, any property, real or personal, involved in the violation, or any property traceable to such property.

5. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with 18 U.S.C. §§ 982(a)(1) and 924(d)(1); 21 U.S.C. § 853; 26 U.S.C. § 5872(a); and 28 U.S.C. § 2461(c).)

Pursuant to the E-Government Act, the ... under seal ...

*United States v. MICHAEL STEVEN LAMBERT, a/k/a "Christopher DeCamillo," et al.*
Criminal Case No. 2:20-cr- 112

A TRUE BILL:

_____
FOREPERSON

G. Zachary Terwilliger
UNITED STATES ATTORNEY

By: _____
Kristin G. Bird
Special Assistant United States Attorney
Andrew Bosse
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 6000
Norfolk, VA 23510
Office Number: 757-441-6331
Email Address: kristin.bird@usdoj.gov
andrew.bosse@usdoj.gov

15